UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**LARICO DWAYNE GADDIE, SR.**                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 5:24CV-P36-JHM**

**DAVID KNIGHT *et al.***                                                                                       **DEFENDANTS**

**MEMORANDUM OPINION**

Plaintiff Larico Wayne Gaddie, Sr., filed the instant *pro se* prisoner 42 U.S.C. § 1983 action. This matter is now before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss the action.

**I. SUMMARY OF FACTUAL ALLEGATIONS**

Plaintiff filed the instant action on March 6, 2024.[1] He was a pretrial detainee at the time of the alleged events. He sues David Knight, the Jailer of the McCracken County Regional Jail (MCRJ) and the following MCRJ personnel: Capt. Steven Carter, Lt. Darryl Carr, Lt. Trey English, Mary Carter, Amanda Tines, Heather Mackalemere, Brian Mattingly, Brandon Miller, Brenda Wright, Michelle Price, Ashley Davis, Brittany Ware, Thiawun Harmon, Joshua Johntson, Burce Mills, David Burn, Vivian Otawa, James Turner, and Travis Wright. He sues each Defendant in his or her individual and official capacities.

Plaintiff states that he was booked into the MCRJ on April 1, 2020. He reports that when he arrived he "suffered a broken mannible in 3 places" and had just undergone emergency surgery. He states, "I had what is called an 'apex wing system' placed in my mouth, which is a solid metal contraption." He asserts that he was not taken to medical upon arrival. He also states

---

[1] Under the mailbox rule, a prisoner's document is deemed filed when presented to prison officials for mailing. *Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)). While Plaintiff does not give the date he presented his motion for mailing, the envelope in which the filing came is postmarked March 6, 2024, which the Court will use as the date of filing. *See Powell v. Mich. Dep't of Corr.*, No. 22-2162, 2023 U.S. App. LEXIS 11076, at *2 (6th Cir. May 2, 2023).

that he was supposed to receive a "liquid/pureed diet" and pain medication but was denied both. He reports that he "was finally taken to medical" on April 2, 2020, approximately 18 and a half hours after arriving. He was told by Defendant Wright that he could not receive the pain medication he was prescribed, which Plaintiff states was a lie because another inmate did receive pain medication. He asserts that on April 3, 2020, he complained to jail personnel about his lack of pureed food but his complaints were ignored. He states that he was moved to an isolation cell where he was forced to sleep on the floor on a bare mattress in a filthy cell. Plaintiff reports that on April 5, 2020, he again complained to jail personnel about hunger due to his food not being pureed and was again ignored. He also continued to be denied pain medication and was in severe pain.

Plaintiff states that on April 9, 2020, jail personnel came to take his mattress away, which he alleges was a violation of Kentucky Department of Corrections policy. He also states that during the first eight days he was housed at MCRJ he was given few showers and not allowed recreation and that his cells were in violation of federal and state health codes. He asserts that after he refused to give officers his mattress, they threatened to tase him and then put him in a restraint chair with "unnecessary use of force." He also states that Defendant Otawa "squeezed my entire face which was still broken for 13 minutes straight." He reports that he remained in the restraint chair for more than four hours. He requested and was denied medical treatment.

Plaintiff asserts on April 11, 2020, jail personnel came again to take his mattress away and he refused and that Defendant Johnston "shot me with a 25,000 volt taser for no reason at all" causing severe injury. He states, "This basically was an attempt on my life. Being that 25,000 volts of electricity surged throughout my body I could've succumbed to death . . . due to steel being ground for electrical currents" due to the wiring in his mouth. He was placed again in

a restraint chair for more than three hours. He reports that he was then housed in an isolation cell for 56 days. He states that he was "grossly underweight" due to not being fed a pureed diet but was finally given Ensure protein shakes. He maintains that he was still not given pain medication or a suction machine which he needed for his injuries. He states that after being tased he lost the feeling in the bottom half of his mouth and nothing was done about it. He was also laughed at, taunted, and called racist slurs by officers.

      Plaintiff states that he was taken to University of Louisville Hospital on May 26, 2020. On July 18, 2020, the apex system in his mouth was removed, which was 41 days later than it should have been removed. He asserts that he still suffers from numbness, stiffness, and pain due to the tasing incident. He reports that nineteen days after the apex system was removed he was placed back in general population in a violent offender cell "with a jaw that was healing" and continued to be denied pain medication. He asserts that on the ninth day he was "attacked and injured by an inmate" and went to a hospital for three days. He was then placed back in an isolation cell and "an apparent $100,000 hit was on me by whom I don't know." Later, after he was attacked by two inmates, he was placed in a violent offender cell from September 24, 2020, to December 11, 2020, and was not offered protective custody.

      After he was moved to another cell, he describes an incident on January 11, 2021, where his water bottle was tampered with and he "took a hit" off another inmate's e-cigarette resulting in him testing positive for "meth, PCP, and fentanyl" and "nothing was done" about it. He states, "There had been complaints by inmates that there was large amounts of narcotics floating around the jail." He states that he was then placed back in isolation for 83 more days. He describes another incident where he was attacked by another inmate in the chapel and was tased even though he was only defending himself.

Plaintiff states that throughout his incarceration from April 1, 2020, to April 3, 2023, he "had to sleep on steel bunks in cells that were not cleaned.  That were roach and insect infested as well as this county still has black mold throughout its ventilation system that gave me breathing problem."  He states, "The living conditions are squalid, grossly over crowded, doors to cells are broken, theirs weapons all over the jail, it's filthy.  Inmates like me are subjected to racial insults and attacks on a regular by the jails staff."  He states, "I was targeted by this Jailer and his staff and was lucky to leave with my life.  The McCracken County Sheriff's Dept. had a personal vendetta against me, being that I was under a joint task state/federal investigation."

As relief, Plaintiff seeks compensatory damages.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When determining whether a plaintiff has stated a claim upon which relief can be

granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

Section 1983 does not contain its own statute-of-limitations period, but constitutional claims asserted under § 1983 are governed by the state personal injury statute of limitations. *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). Personal injury actions in Kentucky "shall be commenced within one (1) year after the cause of action accrued." Ky. Rev. Stat. § 413.140(1); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Although the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

The applicable statute of limitations is determined by state law, but the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (2007) (citing *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). Under federal law, "'the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Arauz v. Bell*, 307 F. App'x 923, 927-28 (6th Cir. 2009) (quoting *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988)). In other words, to determine when a § 1983 cause of action accrues, a district court must examine what event(s)

should have alerted the typical individual to protect his or her rights. *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015).

Plaintiff alleges that he was booked into MCRJ on April 1, 2020, and describes a series of incidents which occurred, the latest date being April 21, 2021. Each of the incidents, including being denied medical treatment and a liquid/pureed diet, being subjected to excessive force in the form of being tased and placed in a restraint chair, being housed in unsanitary conditions, being denied a mattress, and being attacked by other inmates, accrued when Plaintiff knew or had reason to know of the injury giving rise to his claims. Even assuming that his claims accrued on the latest of the dates he provided, April 21, 2021, the limitations period expired one year later, April 21, 2022. The complaint was not filed until March 6, 2024, nearly two years after the expiration of the statute of limitations. Therefore, the Court finds that it is obvious on the face of the complaint that Plaintiff's § 1983 claims based on the incidents listed in the complaint are untimely, and these claims must be dismissed as frivolous.

To the extent Plaintiff makes allegations concerning conditions that occurred throughout his entire incarceration from April 1, 2020, to April 6, 2023, because Plaintiff filed his complaint on March 6, 2024, only claims which accrued on or after March 6, 2023, would not be time-barred. The complaint makes no allegations of harm Plaintiff suffered between March 6, 2023, and his release from MCRJ on April 6, 2023, that support a valid constitutional claim. Therefore, any remaining claims must be dismissed for failure to state a claim upon which relief may be granted.

For the foregoing reasons, the Court will dismiss the action by separate Order.

Date: July 17, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.010